UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**Lanique Q.R., on behalf of R.L.R., Jr.,**

                         Plaintiff,                      19-CV-1196Sr

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                         Defendant.

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #14.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on July 13, 2015, alleging disability beginning July 19, 2014, at the age of 9, due to learning disability, speech and language impediment, slow learning, difficulty catching on and forgetfulness. Dkt. #4, p.82.

On May 17, 2018, plaintiff appeared with his son and counsel and testified at an administrative hearing before Administrative Law Judge ("ALJ"), Theodore Kim.

Dkt. #4, pp.46-61. The child testified that he was 13 years old and in the seventh grade. Dkt. #4, p.54. His favorite subject was math. Dkt. #4, p.54. He did not play sports. Dkt. #4, p.54. He liked to play video games. Dkt. #4, p.55. Plaintiff testified that the child's vocabulary was limited and that he often has trouble expressing himself with words and carrying on a conversation. Dkt. #4, pp.56-57 & 60. He testified that his son was forgetful and easily distracted and required constant redirection. Dkt. #4, p.58. Plaintiff testified that the child puts forth effort with his homework and is able to do some, but not all, of his homework on his own. Dkt. #4, p.58. He indicated that the child would forget things that plaintiff had gone over with him previously. Dkt. #4, p.59. The child has friends at school. Dkt. #4, p.58.

The ALJ rendered a decision that plaintiff was not disabled on October 5, 2018. Dkt. #4, pp.25-41. The Appeals Council denied review on July 11, 2019. Dkt. #4, p.4. Plaintiff commenced this action seeking review of the Commissioner's final decision on September 6, 2019. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v.*

*Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

An individual under the age of 18 will be considered disabled under the Social Security Act ("Act"), if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations and can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner must follow a three-step sequential evaluation to determine whether a child is disabled within the meaning of the Act. 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaging in substantial gainful activity. 20 C.F.R. § 416.924(a) & (b). If not, the ALJ proceeds to step two and determines whether the child has an impairment or combination of impairments that is severe, *i.e.*, causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the ALJ finds a severe impairment or combination of impairments, the ALJ proceeds to step three and examines whether the child's impairment or combination of impairments meets or equals, medically or functionally, the criteria of a listed impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 416.924(d).

To evaluate functional equivalence, the ALJ considers how the child functions in the following domains: (1) acquiring and using information; (2) attending

and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must cause marked limitations in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a). A child has a marked limitation when the impairment or combination of impairments interferes seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(2)(i). A child has an extreme limitation when the impairment or combination of impairments interferes very seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(3)(i).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) the child had not engaged in substantial gainful activity since the application date of July 9, 2014; (2) the child's expressive/receptive language disorder and learning disorder constitute severe impairments; and (3) the child's impairments did not meet or medically or functionally equal any listed impairment and the child was not, therefore, disabled within the meaning of the SSA. Dkt. #4, pp.28-38. More specifically, the ALJ determined that the child exhibited: (1) marked limitation in acquiring and using information; (2) less than marked limitation in attending and completing tasks; (3) less than marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) no limitation in ability to care for himself; and (6) no limitation in health and physical well-being. Dkt. #4, pp. 34-41.

Plaintiff argues that the ALJ did not set forth the criteria or explain his reasoning for finding that the child did not meet listing 112.05B and it is unclear whether the ALJ considered the updated criteria for this listing. Dkt. #7-1, pp.12-14. Plaintiff argues that the child meets listing 112.05B because he has two full IQ scores below 70 and a marked limitation in the mental functioning areas of "understanding, remembering or applying information" and "interacting with others." Dkt. #7-1, pp., pp.14-20. Plaintiff also argues that the ALJ improperly determined that the child had less than a marked limitation in the functional domain of "interacting and relating with others" and that proper analysis of this functional domain would result in a determination that the child functionally equals listing 112.05B. Dkt. #7-1, pp.20-24. Finally, plaintiff argues that the ALJ improperly discounted statements from the child's parents the severity of his impairment. Dkt. #7-1, pp.24-25.

The Commissioner notes that the ALJ cited the correct, updated title for listing 112.05 pertaining to intellectual disorders rather than the prior listing for intellectual disabilities. Dkt. #11-1, p.15. Even assuming that the child's IQ score satisfied the listing criteria, the Commissioner argues that substantial evidence supports the ALJ's determination that the child did not demonstrate an extreme limitation or two marked limitations in the areas of mental functioning as required to meet Listing 112.05B. Dkt. #11-1, p.15.

Listing 112.05B provides that an individual will be found disabled based upon an intellectual disorder when the following criteria are established:

1. Significantly subaverage general intellectual function evidenced by a or b:
   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
   b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence;
   and
2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
   a. Understand, remember, or apply information; or
   b. Interact with others; or
   c. Concentrate, persist, or maintain pace; or
   d. Adapt or manage oneself.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.05(B).

The sum total of the ALJ's discussion of whether the child met or medically equaled Listing 112.05 is as follows: "The undersigned has considered the requirements of childhood listings 112.12, Neurocognitive disorders and 112.05, Intellectual disorder, but the medical evidence is not at a level of severity that satisfies the requirements of either of those listings." Dkt. #4, p.29. However, the record contains test results dated October 3, 2013 from the Cheektowaga Central School District Committee on Special Education ("CSE"), recording the child's full scale IQ at 68 (Standard Score), with a notation that the child's full scale IQ is less meaningful for interpretation due to a significant point difference between the child's indices. Dkt. #4, pp.272 & 273. The ALJ acknowledged this result in his discussion of functional equivalence, but did not address it in consideration of whether the child met or

medically equaled Listing 112.05. Dkt. #4, p.30. The record also contains test results from the consultative examiner, Gregory Fabiano, Ph.D., dated October 22, 2015, recording a full scale IQ of 62, with a notation that the child "appeared to give up easily on some of the tasks, which may have negatively impacted his performance" and may underestimate the child's overall level of cognitive ability. Dkt. #4, pp.293-294. The ALJ acknowledged this result in his discussion of functional equivalence, but did not address it in consideration of whether the child met or medically equaled Listing 112.05. Dkt. #4, pp.30 & 33.

When evaluating whether a child's impairments meet or equal a Listing, the ALJ must refer to the specific criteria set forth in the Listing and set forth his analysis of the criteria with sufficient specificity to enable a reviewing court to determine whether the ALJ's decision is supported by substantial evidence. *Barone o.b.o. Z.B. v. Comm'r of Soc. Sec.,* 19-CV-1636, 2020 WL 6579070, at *2 (W.D.N.Y. Nov. 9, 2020). It is not the job of the reviewing court to make an independent determination as to whether the record supports a finding that the child meets or equals a Listing; rather, the ALJ needs to articulate his basis for finding that the child's impairment does not meet or equal the criteria. *Id., quoting Hendricks v. Comm'r of Soc. Sec.*, 452 F. Supp.2d 194, 199 (W.D.N.Y. 2006). Even where, as here, the ALJ determined that the child had less than a marked limitation in his ability to interact and relate with others, the ALJ cannot "bootstrap onto later findings regarding functional equivalence in deciding whether plaintiff is disabled for symptoms which medically meet or equal a Listing." *Id.* at *3. "While there may be some overlap between the subject matter of the six domains

covering functional equivalence and the requirements of the second prong of 112.05(B), the ALJ's consideration of whether [the child's] impairments *functionally* equal the listing is not the same as considering whether those impairments *literally meet* the explicit provisions of 112.05(B)." *Gonzalez o.b.o. J.A.M. v. Saul*, 18-CV-6240, 2019 WL 3891021, at *5 (W.D.N.Y. Aug. 19, 2019).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7), is granted in so far as plaintiff seeks remand and the Commissioner's motion for judgment on the pleadings (Dkt. #11), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     Buffalo, New York
              March 31, 2021

                            s/ H. Kenneth Schroeder, Jr.
                           **H. KENNETH SCHROEDER, JR.**
                           **United States Magistrate Judge**